YORK MORTGAGE CORPORATION, Respondent, *v.* CLOTAR CONSTRUCTION CORPORATION et al., Defendants, and OCEAN REALTY COMPANY, Appellant.

OCEAN REALTY COMPANY, Appellant, *v.* CLOTAR CONSTRUCTION CORPORATION et al., Respondents. (Actions 1, 2, 3 and 4.)

(Argued May 6, 1930; decided June 10, 1930.)

*William Godnick* and *A. A. Forman, Jr.*, for appellant. Respondent's mortgage is not a building loan mortgage. (*Strassberger* v. *Leerberger*, 233 N. Y. 55; *Sullivan* v. *Young*, 159 N. Y. Supp. 791; *Weaver Hardwood Co.* v. *Solmonowitz*, 235 N. Y. 321; *Lehnert* v. *Notlim Realty Corp.*, 251 N. Y. 340.) The trial court was justified in finding that a fraud had been perpetrated upon appellant by the respondent and its associates and the Appellate Division erred in reversing such finding. All the facts and circumstances clearly establish it. (*Malensky* v. *Melen*, 223 N. Y. 19; *Adams* v. *Gillig*, 199 N. Y. 314; *Hennequin* v. *Naylor*, 24 N. Y. 139; *Lewis* v. *Gallner*, 129 N. Y. 227; *Matter of Dorrity*, 118 Misc. Rep. 725.)

*Arthur P. Hilton* for respondent. The respondent's agreement secured by the mortgage in suit was a valid building loan agreement, and the mortgage is entitled to priority under the terms of the subordination agreement in the appellant's mortgages. (*Dearstine* v. *Carpenter*, 106 Misc. Rep. 102; Thomas on Mortgages, § 300; *Paris* v. *Lawyers Title Co.*, 141 App. Div. 866; 206 N. Y. 637; *Peters* v. *Meyers*, 72 App. Div. 585; *Kam* v. *Benjamin*, 10 App. Div. 419; 158 N. Y. 725; *Smith* v. *Pure Strain Farms Co.*, 180 App. Div. 703; *Edison El. Ill. Co.* v. *Thacher*, 229 N. Y. 172; *People* v. *Marcut*, 185 N. Y. 257; *Lochner* v. *New York*, 198 U. S. 95; *People* v. *Schweiner Press*, 214 N. Y. 395; *Lowenfeld* v. *Wimple*, 139 App. Div. 621; *Brislin Co.* v. *Bossert*, 177 App. Div. 893; *Tripp* v. *Babcock*, 195 Mass. 1; *Penn. Steel Co.* v. *Title Guarantee & Trust Co.*, 193 N. Y. 37.) Respondent's mortgage was a good and valid lien, and the advances thereon were proper. (*Penn. Steel Co.* v. *Title Guarantee & Trust Co.*, 193 N. Y. 37; *Lowenfeld* v. *Wimpie*, 139 App. Div. 621; *Brislin Co.* v. *Bossert*, 177 App. Div. 893.) The respondent's mortgage falls within the provisions of the subordination clause in appellant's mortgages and is made superior in lien by force of the provisions of said clause.

(*Hull* v. *Littauer*, 162 N. Y. 569; *Eisenberg* v. *Lefkowitz*, 142 App. Div. 569; *Tripp* v. *Babcock*, 195 Mass. 1; *Penn. Steel Co.* v. *Title Guarantee & Trust Co.*, 193 N. Y. 37.) The fee charged by the respondent for making the loan in question did not constitute any reason for refusing judgment to the respondent and for holding that respondent's mortgage was not a building loan mortgage. (*Lehnert* v. *Notlim Realty Corp.*, 251 N. Y. 340.)

POUND, J. The Appellate Division modified the judgment of the County Court, Nassau county, upon the facts, made new findings and rendered final judgment thereon in favor of York Mortgage Corporation. This court must, therefore, review the facts. (Const. art. VI, § 7.) The question arises as to the scope of such a review. Before the adoption of the Constitution of 1894 it was the duty of this court, when there was a reversal upon the facts, to review the questions of fact as well as the questions of law. The question then arose as to the jurisdiction of the General Term to review findings of fact made by the trial court. It was held that the trial justice or referee was the best judge of the weight to be given to conflicting and doubtful testimony; that the appellate tribunal was not justified in reversing on the evidence solely because it would feel constrained to find the facts the other way but should reverse only when the decision below was clearly erroneous. (*Baird* v. *Mayor, etc.*, 96 N. Y. 567, 576; *Sanger* v. *French*, 157 N. Y. 213, 224; cf. 4 C. J. pp. 892–899 for a full statement of the old rule.) This jurisdiction to review the facts was withdrawn by the Constitution of 1894. Review by the Court of Appeals in civil cases was thereby limited to questions of law. The last vestige of the right of this court to review the facts of a trial before a court or a referee was swept away. (*National Harrow Co.* v. *Bement & Sons*, 163 N. Y. 505, 508.) When Constitution, article VI, was amended generally in 1925, the right to review the facts was, to a

limited extent, revived. It was provided: § 7. " The jurisdiction of the Court of Appeals, except where the judgment is of death, *or where the Appellate Division, on reversing or modifying a final judgment in an action or a final order in a special proceeding, makes new findings of fact and renders final judgment or a final order thereon,* shall be limited to the review of questions of law."

The grant of jurisdiction to review new findings was proposed by the Constitutional Convention of 1915 and was engrafted in the Constitution on the recommendation of the Judiciary Constitutional Convention of 1921 which said in its report to the Legislature (Legislative Document [1922] No. 37, at p. 19): " The argument is that if the Appellate Division actually makes new findings of fact *and thereupon renders final judgment,* the litigant decided against ought to have a review of *those findings* in some appellate tribunal." One appeal on the facts as found is thus allowed in all cases to the party aggrieved and the jurisdiction of the Appellate Division to make its own decisions on the weight of evidence is recognized.

Prior to the adoption of the new judiciary article the power of the Appellate Division to render final judgment had been materially enlarged by the Legislature. (Code Civ. Pro. § 1317; Civ. Prac. Act, § 584.) It might deal with the evidence in an equity suit " just as a trial court ought to have dealt with it " (*Bonnette* v. *Molloy,* 209 N. Y. 167, 171) and direct judgment accordingly, making such findings as might be necessary to support the judgment. (*Bonnette* v. *Molloy, supra,* p. 172; *Lamport* v. *Smedley,* 213 N. Y. 82, 85.) This provision is now incorporated in the Constitution. Article VI, section 8, reads as follows: " Upon an appeal from a judgment or an order, any appellate court to which the appeal is taken which is authorized to review such judgment or order may reverse or affirm, wholly or in part, or may modify the judgment or order appealed from, and each interlocutory judgment or intermediate

or other order which it is authorized to review, and as to any or all of the parties. It shall thereupon render judgment of affirmance, judgment of reversal and final judgment upon the right of any or all of the parties, or judgment of modification thereon according to law, except where it may be necessary or proper to grant a new trial or hearing, when it may grant a new trial or hearing."

The mere reversal of findings made by a referee or judge, on the ground that they are against the weight of evidence, still leads to a new trial rather than a final judgment (*Caldwell* v. *Nicolson*, 235 N. Y. 209; *McDougall* v. *Shoemaker*, 236 N. Y. 127), unless accompanied by a contrary finding express or fairly to be implied. (*Matter of Flagler*, 248 N. Y. 415, 420.) To make the new practice effective, the Appellate Division, when it reverses or modifies, is permitted to make new findings of fact. (Rules Civ. Prac. rule 239.)

Prior to the change the appellate tribunal made no findings of fact. " In equity causes, before the days of code practice, the appellate court was not constrained upon reversal to order a new trial, but might proceed to render whatever new decree the justice of the case required. * * * The Appellate Division has now been reinvested with that power." (*Lamport* v. *Smedley*, *supra*, p. 85.) In the chancery practice the appellate tribunal " proceeded to make a final determination of the controversy " (*Schenck* v. *Dart*, 22 N. Y. 420, 423); now the Appellate Division makes a full and complete adjudication on the facts. (*Lamport* v. *Smedley*, *supra*.) It is now the appropriate function of an appellate court in equity cases to determine controverted questions of fact, and render final judgment thereon. The interests of improved procedure do not lead us to limit the power of reversal by the Appellate Division to cases where the decision of the trial court is " clearly erroneous." It renders the judgment which the facts warrant.

This court has full jurisdiction, in the class of cases provided for in section 7 (*supra*), to review the facts as "found by the Appellate Division and their decision thereon." (*Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22; *Matter of Flagler, supra.*) In close cases, the Appellate Division should and we may properly take into consideration, in passing on the credibility of conflicting evidence, the fact that the trial judge had the advantage of seeing the witnesses. "In a case *so close as this*, let the court of first instance decide." (*Boyd* v. *Boyd*, 252 N. Y. 422, 429.) This court will sift all the evidence and, with due deference to the findings of fact by the trial judge, as thus indicated, ascertain whether the Appellate Division acted in accordance with the weight of evidence.

The power of the Appellate Division to make new findings of fact and a final adjudication thereon is, of course, limited to cases triable by the court and does not extend to cases triable as of right by a jury. (*Middleton* v. *Whitridge*, 213 N. Y. 499, 506.)

Five mortgage foreclosure actions were consolidated and the proceedings thereafter had in the consolidated action. The appeal involves in each case the priority of two mortgages, one held by Ocean Realty Company, the other by York Mortgage Corporation. The mortgages of the Ocean Company are prior in point of time. The mortgage of the York Corporation claims priority by virtue of a subordination clause contained in the prior mortgages which reads as follows: "This mortgage shall at all times be and remain subject and subordinate to the lien of any building loan bond and mortgage, and to any advances thereunder, and/or a first mortgage which may be obtained by the then owner of the property from any source, provided that the amount obtained by building and loan mortgage, or permanent first mortgage does not exceed *sixty per cent. of the value of the land and buildings*, said value to be determined by an appraiser in any *bona fide* reputable lending institution doing business in the State of New York."

The mortgage of the Ocean Company is in each case a purchase-money mortgage on a separate group of lots included in a tract of land laid out in ninety vacant lots conveyed by it to Ledton Realty Corporation on October 18, 1926. The selling price was $103,500, of which $1,200 was paid in cash and $102,300 was secured by the purchase-money mortgages. Thereafter on December 6, 1926, Ledton Realty Corporation conveyed the same premises to Rednet Realty Corporation and it, in turn, on December 8, 1926, conveyed them to Clotar Construction Corporation, subject only to restrictive covenants imposed on the property by Ocean Realty Company and to the four purchase-money mortgages, with a warranty that except as aforesaid the premises were free and clear of all incumbrances. No reference is made therein to a purchase-money mortgage given by the Clotar Company.

The Clotar Company on February 3, 1927, made a purported building and loan agreement for $35,000 with the York Company for the alleged purpose of erecting on the premises twenty frame and stucco dwellings and garages and to build streets, sidewalks and curbs and gave a mortgage to the York Company for that amount, dated January 21, 1927, due April 1, 1927, a period of little more than two months, which is the mortgage here in question. The title was examined for this loan by Title Guarantee and Trust Company. Attention was called by the title company to the fact that a subordination agreement should be obtained from the holder of the purchase-money mortgages. The title company also certified that the property had been appraised and that an advance of $20,500 would not be in excess of sixty per cent of the value of the vacant property. The York Company claims that on the date when it received the mortgage it made the following advances and payments to or for the Clotar Company, totaling $20,849.50:

To the title company for recording fees, disbursements, etc...................... $350 00
To the title company as deposit for taxes.... 250 00
To * * * its attorneys, as a bonus for the loan of $35,500, which sum was thereafter returned by the said attorneys to itself.... 5,017 50
To the Rednet Realty Corporation to discharge an alleged unrecorded purchase-money mortgage claimed to have been made by the Clotar Construction Corporation to the Rednet Realty Corporation, dated December 8, 1926 (the same date as the deed to the Clotar Company) and payable September 6, 1927, and claimed to have been lost and which the trial court found had never existed......... 15,232 00

Nothing was done thereafter in the way of improving the property. Not a dollar was advanced toward construction and if any purpose of the Clotar Company existed to erect the buildings mentioned in the building loan agreement, it was abandoned.

The question now arises whether the advances on the temporary mortgage were in fact advances under a building loan mortgage to which the purchase-money mortgages became subordinate. The Appellate Division has held, reversing the trial court, that, as the subordination agreement does not require that the building loan mortgage shall represent advances put into actual construction of buildings on the property, the advances were proper prior charges against the property. The rule thus stated holds good as against genuine advances made under a true building loan agreement. It is the ordinary and usual course of dealing where a party agrees to make a building loan on real estate that existing incumbrances and legitimate expenses attendant on the loan shall be paid out of the new loan unless the agreement limits the uses to which the loan shall be put. (*Pennsylvania Steel Co.* v. *Title Guarantee & Trust Co.*, 193 N. Y. 37, 43, 45.) But

a building loan agreement is an agreement by which one undertakes to advance to another money to be used primarily in the erection of a building and not merely to pay existing mortgages and bonuses to the lender for making the loan.

It was not contemplated as between the two mortgages that the building loan mortgage should be subject to a deduction of $5,000 to be returned to the mortgagee. (*Lehnert* v. *Notlim Realty Corp.*, 251 N. Y. 340.) In the later case of *Iser* v. *Marks Bldg. Corp.* (253 N. Y. 499) we held that the holder of a second mortgage, subordinate to an existing mortgage, could not deny the validity of the prior mortgage in so far as it secured the payment of a bonus. The rule of the *Lehnert* case was limited to the facts presented but it is applicable here.

Other reasons suggest that the mortgage in question was not a building loan mortgage. The effort of the parties appears quite clearly to have been to give the transaction the form of a building loan mortgage in order to advance the priority of a land mortgage ahead of the Ocean purchase-money mortgages. It would be necessary to raise something like $330,000 to put up the buildings contemplated, yet the Clotar Company gave a mortgage for $35,000, handing back $5,000 thereof in the form of a bonus to the York Company; $15,000 was the only present advance made by the York Company. That went to pay off the lost unrecorded mortgage held by the Rednet Corporation, although it was not due for nine months. The result, as it now appears, is that the Clotar Company has paid a bonus of $5,000 for receiving $15,000, agreeing to pay $20,000 in three months, in order to discharge a $15,000 mortgage, the existence of which is at least doubtful.

Warned by the title company that an actual subordination agreement was required in order to give the mortgage priority, they preferred to let the holder of the purchase-money mortgages sleep in ignorance of their project and

to rest on the existing subordination agreement. A formal covenant from the mortgagor that the buildings would be constructed was not required by the York Company. The parties contented themselves with a mere recital that such was the purpose of the mortgage. Obviously neither borrower nor lender had any great concern whether the buildings would be constructed on the vacant property or whether more advances would be called for. The advances were made in reliance on the value of the land only.

Suspicion that the York mortgage was not a genuine building loan mortgage ripens into conviction in the surrounding circumstances. The reasonable conclusion is that the York Company was willing to take a mortgage on the land and to speculate whether it might turn out to be a building loan mortgage entitled as such to priority rather than a second mortgage on the land, which in truth it turned out to be.

The decisions made by this court to uphold legitimate practices may not be turned from their beneficent purpose to sustain transactions which may have the form of fairness but which in fact are attempts to gain unfair advantages never contemplated by the parties. We may penetrate the disguise of form and see the substance beneath.

The claim that the York Company's mortgage may be considered as a " first mortgage " within the meaning of the subordination clause and as such entitled to priority is contrary to the fair meaning of the clause relied on. Read as a whole, the subordination clause plainly contemplates either (a) a building loan mortgage to raise funds to erect buildings, or (b) a permanent first mortgage on the land and buildings when the buildings are erected or their erection has begun. Any other construction would leave the Ocean Company at the mercy of the subsequent owners of the property. The short term and the small amount of the York mortgage suggest anything but permanency. The language of the clause relied on

may be ambiguous in the use of the words " first mortgage " but the ambiguity is resolved when the words " permanent first mortgage " are read in the light of their obvious purpose to retain the priority of the Ocean mortgage as against a permanent mortgage until the value of the land and buildings justifies subordination.

The judgment of the Appellate Division should be reversed and that of the County Court modified by striking out the provision that York Mortgage Corporation shall pay the deficiency on the foreclosure sale to Ocean Realty Company and by providing that Clotar Construction Corporation shall pay such deficiency, and as so modified affirmed, with costs in this court and in the Appellate Division to Ocean Realty Company.

CARDOZO, Ch. J., CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur; LEHMAN, J., not sitting.

Judgment accordingly.