MIRIAM B. ROSENFIELD, Appellant-Respondent, *v.* EDWARD M. ROSENFIELD, Respondent-Appellant.

First Department, December 13, 1948.

*Samuel J. Siegel* of counsel (*Irving A. Thau* and *Chester E. Frankel* with him on the brief), for appellant-respondent.

*Mitchell Salem Fisher* of counsel (*Mendel Zucker* and *Sol Deutsch* with·him on the brief; *Deutsch & Zucker,* attorneys), for respondent-appellant.

CALLAHAN, J. The parties cross-appeal from the decree in an action for separation. The judgment awarded a separation to the wife on the ground of the defendant's cruelty and dismissed the husband's counterclaim for separation based on cruelty and abandonment by the plaintiff. The custody of the child of the parties was awarded to the defendant with broad rights of visitation in the mother.

The marriage of the parties to this action took place on August 24, 1935, and final separation on July 16, 1946. The only issue of the union is a son born on September 19, 1942.

The alleged acts of cruelty on the basis of which a decree was awarded in the plaintiff's favor occurred over the years between 1939 and 1946.

We find, however, that the plaintiff has failed to establish by a fair preponderance of the credible evidence that the defendant has been guilty of such cruel and inhuman treatment as to warrant a decree of separation in favor of the plaintiff. It is our opinion that the differences between the parties were largely related ·to disputes concerning property. We believe that the primary and immediate cause of the separation was an effort on the part of the wife to induce or compel the defendant to purchase a considerable amount of jewelry and

furs for her adornment and gratification. It also appears that the parties quarreled over stock in a corporation controlling the defendant's business, and which the plaintiff claims to have been a gift from her husband. Indeed, the wife asserts that the defendant promised to purchase the jewelry and furs for her as part of a campaign to accomplish retransfer of the stock. The plaintiff contends that her husband has actually paid for the jewelry, but is conspiring with the seller to make it appear that he has not paid for the same because of failure to obtain return of the stock. The defendant denies any such conspiracy or purpose, and contends that the wife owns no stock in his corporation but holds only worthless certificates of which she improperly took possession.

It is not necessary to decide the dispute regarding the stock. Perhaps neither party has told the whole truth in the matter. As for the jewelry and its place in the rift between these parties, it appears that this was taken on memorandum. Each memorandum was signed by the wife, and only one by the husband. The plaintiff got at least some of the jewelry when her husband was not even present. The memorandum agreement signed by the latter covered several pieces of jewelry, including a " love ring " which the husband admittedly decided to buy for the plaintiff. The wife was familiar with memorandum transactions and caused insurance to be procured for the " love ring " alone. The plaintiff should know that the circumstances of her possession and purchases on memorandum require the return of the jewelry, but she persists in her refusal on what we consider an untenable claim, insofar as the record discloses, that the defendant has paid for the same. While the evidence with respect to the furs is not so complete, we find that at least one expensive fur coat is being retained by the wife with similar knowledge that the purchase price has not been paid.

The plaintiff has never surrendered, nor promised to surrender the stock to the defendant, and merely supports her determination to withhold the jewelry on the assertion that she will not permit the husband to be what she terms an " Indian giver ". In our opinion the attitude of the wife in retaining the furs and jewelry other than the " love ring " is unjustified, and the husband had the right to resist and refuse to be coerced into buying these luxuries. While the defendant's conduct has not always been exemplary, at least to this extent he was not at fault.

All these transactions relating to the jewelry and furs occurred after January, 1946, which was the date of the husband's last act of alleged cruelty prior to the period of July 11 to July 16, 1946. The incidents of these five days, however, even as recounted by the plaintiff were trivial insofar as they relate to any physical cruelty. The parties were quarreling bitterly over the jewelry, furs, and stock. It also appears that proceedings instituted by the jeweler were pending in the Magistrate's Court.

With respect to the defendant's counterclaim for a separation we are constrained to find that the alleged cruelty of the plaintiff has not been established by the proof, nor has the defendant made out a case of abandonment by a fair preponderance of the evidence under all the circumstances, and particularly in view of the fact that the wife was accustomed at times to go to live in a hotel with his knowledge and approval.

The effect of this decision is to leave the parties as they were before the institution of suit. We think that their disputes over property should be adjusted preferably by the parties themselves, or if not, then by the courts. We see no reason why the marital relationship should not be resumed. Their differences over material things should not be the principal concern of the parties, but they should join in an effort to repair the break in the family relations so that their son may be reared as a member of a family and not the victim of divided parenthood.

It is not necessary that we state our conclusions on other specific matters, which will be set forth in such new findings as may be made.

We make no determination with respect to custody on the assumption that such provision will be rendered unnecessary by a reconciliation. In the meantime the custody of the child may be continued as provided in the temporary order dated September 9, 1947, and entered in the Supreme Court, Westchester County, in the consolidated proceedings between the parties respecting custody.

The judgment below should be accordingly modified by striking such provisions as are inconsistent with this opinion and providing for dismissal of the complaint, and, as so modified, affirmed, without costs.

SHIENTAG, J. (dissenting in part). I am unable to concur with the majority of the court insofar as their decision reverses the judgment of separation granted to the wife and dismisses

her complaint. The majority have, in substance, made two new findings of fact: (1) that " plaintiff has failed to establish by a fair preponderance of the evidence that the defendant has been guilty of such cruel and inhuman treatment as to warrant a decree of separation in favor of the plaintiff "; (2) that " the primary and immediate cause of the separation was an effort on the part of the wife to induce or compel the defendant to purchase a considerable amount of jewelry and furs for her adornment and gratification." Those findings are diametrically opposed to those made by the trial court in his decision. He specifically found that the defendant husband was guilty of cruel and inhuman treatment, and that it was because of this, and not because of the controversy over jewelry and furs or other property, that the wife left her husband.

In the last analysis, questions of credibility were presented, and if the trial court believed the testimony of the wife and disbelieved that given by the husband, the findings below are fully sustained by the evidence. In fact, the trial court believed the wife and disbelieved the husband. He said of the wife: " In telling her story, she showed a dignified restraint which is as commendable as it is rare  *  *  *  Defendant denies each incident *in toto* or describes it in such a way as to make it appear either entirely innocent or as an incident in which he was the victim rather than the offender. I believe, however, that plaintiff's version is substantially correct, and I so find."

Of the husband, the trial court said: " In July, 1943, defendant pleaded guilty to an indictment charging him with the crime of making fraudulent statements to an agency of the United States War Production Board. In December, 1943, he was fined by a Justice of this Court in Westchester County for contempt of court committed by wilfully and knowingly giving false testimony upon an examination in supplementary proceedings. On another occasion when being examined as a witness he twice refused to answer questions on the ground that the answers would incriminate him.  *  *  *  In at least several instances, too, his testimony before me is either demonstrably or admittedly false."

With respect to the controversy over the jewelry and furs, the trial court said: " An important question which remains is whether plaintiff did in fact leave defendant's home because of his cruel and inhuman treatment or because of desires and purposes of her own which were apart from and independent of such treatment.  *  *  *  Defendant's counsel argues in short,

that plaintiff left defendant because she had gotten from him all material things she could get and not because of any cruel treatment of her by him. Because of that argument, I received and have given careful attention to an immense amount of testimony, which reference to jewelry and furs and plaintiff's fondness for them; and my conclusion is that, while plaintiff may have an inordinate and unlovely fondness for jewelry and furs and undoubtedly sought to persuade defendant to buy all the jewelry which these jewelers had placed in her possession, the argument that she left her husband because in July 1946 she concluded that she had gotten all material things that she could get from defendant is wholly lacking in any substantial foundation.''

It is true that in reviewing a judgment in equity, on the facts, the court has a much wider latitude than when it deals with the verdict of a jury. (*York Mortgage Corp.* v. *Clotar Const. Corp.,* 254 N. Y. 128, 133.) An appellate court, reviewing a judgment in equity, has the power, in an appropriate case, to make new findings of fact of its own which are contrary to those of the trial court, but this is a power, we have been told, that must be exercised with extreme caution. '' It can, of course, only be on the rarest occasions and in circumstances where the appellate court is convinced by the plainest considerations that it would be justified in finding that the trial judge had formed a wrong opinion.'' (*Yuill* v. *Yuill* [1945], 1 All. E. R. 183, 188.)

So our own Court of Appeals has said: '' Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. * * * How can we say the judge is wrong? We never saw the witnesses. * * * To the sophistication and sagacity of the trial judge the law confides the duty of appraisal. If these witnesses imposed upon the credulity of an experienced fact finder, this court cannot correct him. His was the opportunity, the responsibility and the power to decide.'' (*Boyd* v. *Boyd,* 252 N. Y. 422, 429; see, also, *Smith* v. *Smith,* 273 N. Y. 380, 383; *Amend* v. *Hurley,* 293 N. Y. 587, 594.)

It is, of course, obvious, as was observed in a leading English case, that '' the value and importance of having seen and heard the witnesses will vary according to the class of case, and, it may be, the individual case in question. It will hardly be disputed that consistorial cases form a class in which it is generally most important to see and hear the witnesses, and particularly the spouses themselves, and, further, within that class, cases

of alleged cruelty will afford an even stronger example of such an advantage. Normally, the cruelty is alleged to have occurred within the family establishment, and the physique, temperament, standard of culture, habits of verbal expression and of action, and the interaction between the spouses in their daily life, cannot be adequately judged except by seeing and hearing them in the witness box.'' (*Watt* v. *Thomas* [1947], 1 All E. R. 582, 587.)

It is always desirable for parties to a matrimonial litigation to become reconciled, and the courts should do everything in their power to encourage that happy result and to help bring it about; but that is a process that should be confided to the wise discretion of the trial judge, with the parties before him with whom he may deal directly. I cannot, however, agree that this woman's cause of action should be dismissed, and the specific findings of fact of the trial judge, based entirely on his view of the credibility of the witnesses who appeared before him, be rejected. As was said in *Powell* v. *Streatham Manor Nursing Home* (per Lord MACMILLAN [1935], A. C., 243, 257), a case involving credibility of witnesses: '' I have had an uneasy feeling, as I listened to the able arguments of counsel in this appeal, that I was remote from the poignant realities of the case and that I was being asked, as it were, to dispose of the fate of the parties in their absence. It is only the written evidence which reaches this House; the other evidence which the judge of first instance tells us that he has relied upon cannot be reproduced or subjected to review here, and I have never felt more conscious of the disability imposed by the absence of this aid to judgment.''

I, therefore, vote to affirm the judgment of separation in favor of the wife, and in all other respects concur in the disposition of the appeals made by the learned majority.

PECK, P. J., GLENNON and COHN, JJ., concur with CALLAHAN, J., SHIENTAG, J., dissents and votes to affirm the judgment of separation in favor of the wife, and in all other respects concurs in the disposition of the appeals made by the learned majority, in opinion.

Judgment modified by striking such provisions as are inconsistent with opinion and providing for dismissal of the complaint and as so modified, affirmed, without costs.