FINEST INVESTMENTS, Respondent-Appellant, v SECURITY TRUST COMPANY OF ROCHESTER et al., Appellants-Respondents. (Action No. 1.)

FEDELE V. SCUTTI, Appellant-Respondent, v FINEST INVESTMENTS, Respondent-Appellant. (Action No. 2.)

Fourth Department, November 4, 1983

APPEARANCES OF COUNSEL

*Shapiro, Rosenbaum & Liebschutz* (*Warren B. Rosenbaum* of counsel), for George P. Voxakis, appellant-respondent in Action No. 1.

*Elliott, Stern & Calabrese* (*Warren B. Rosenbaum* of counsel), for Security Trust Company of Rochester, appellant-respondent in Action No. 1, and Fedele V. Scutti, appellant-respondent in Action No. 2.

*Edwin Robert Schulman* for Finest Investments, respondent-appellant.

## OPINION OF THE COURT

BOOMER, J.

The sole issue in these mortgage foreclosure actions concerns the order of priority of the liens of two mortgages. The mortgage first in time, now held by Scutti, was given by the mortgagor as part of the purchase price of 20 acres of land. The subsequent mortgage, now held by Finest Investments, was given to secure a loan of $150,000, $119,000 of which was expended for commitments for loans to finance the construction of a shopping center on the 20-acre parcel.

Finest Investments claims priority for the lien of its subsequent mortgage based upon the subordination clause in Scutti's prior mortgage. The pertinent portions of that clause read: "The Mortgagee * * * hereby subordinates the lien of this mortgage and the debt which it secures to the liens of any construction and/or building loan mortgages made by the Mortgagor herein to any commercial bank * * * and to the advances of moneys pursuant thereto which are hereafter placed by the Mortgagor herein and cover the real property or any part thereof herein described. Construction and/or building loan mortgages for the purpose of this paragraph ELEVENTH shall mean such mortgages placed subject to the terms of building loan agreements, which said agreements are filed in Monroe County Clerk's Office concurrently with the recording of such mortgages." The subordination clause continues and creates a second class of mortgages entitled to priority: "In addition to such subordination the Mortgagee herein * * * hereby subordinates the lien of this mortgage and the debt which it secures to such mortgages as may be placed by the Mortgagor herein * * * to any commercial bank * * * for the purpose of securing permanent mortgage financing for the improvements constructed on the premises described in this mortgage or any part thereof. It is agreed by the Mortgagee that the subordination herein granted shall subordinate the lien of this mortgage and the debt which it secures to the mortgages placed for such permanent financing and to all increases, consolidations and modifications thereof."

■ The trial court properly held that the subsequent Finest Investments' mortgage was not a building loan mortgage within the meaning of the first part of the subrogation clause. Finest Investments' mortgage was filed in the Monroe County Clerk's office concurrently with an instrument denominated "Building-Loan Agreement". That instrument was not a building loan agreement, however, and consequently, the mortgage was not a building loan mortgage. A building loan agreement is "an agreement by which one undertakes to advance to another money to be used primarily in the erection of a building" (*York Mtge. Corp. v Clotar Constr. Corp.*, 254 NY 128, 137); an agreement to provide "a loan for the purpose of erecting a building and to be advanced in installments from time to time as might be rendered safe by the condition of the building" (*Weaver Hardware Co. v Solomovitz*, 235 NY 321, 333-334). The agreement filed with Finest Investments' mortgage did not require the mortgagor to construct any building or improvement and the loan was not to be advanced in installments, but in one lump sum. Thus, the lien of the subsequent mortgage was not entitled to priority under the first part of the subrogation clause.

Relying upon the second part of the subordination clause, the trial court decided that the lien of Finest Investments' subsequent mortgage was entitled to priority over Scutti's prior mortgage to the limited extent of $119,000. In making the decision the court interpreted the second part as providing for the subordination of the lien of the mortgage to the lien of any subsequent mortgage placed for the purpose of obtaining a mortgage for permanent financing. Since $119,000 of the money advanced under the subsequent mortgage was expended for the purpose of obtaining commitments for mortgage loans for the construction of the shopping center, the court accorded the lien of the subsequent mortgage priority, limited however to that sum.

■ We do not agree that the word "securing", in the context of the subordination clause, is synonymous with the word "obtaining". Used in conjunction with the word "mortgage", the usual meaning of the word "securing" is "providing security for" (see Webster's International Dic-

tionary [2d ed]; see, also, the repeated use of "secure" and "secured" in conjunction with "mortgage" in the Real Property Law, i.e., § 254, subds 3, 4, 6; § 258, Schedules O, P, Q, R; § 271, subds 2, 3; §§ 278, 279, subd 5). This interpretation is reinforced by the use of equivalent language in the first, third and fourth sentences of the subrogation clause: "lien of this *mortgage* and the debt which it *secures*" (emphasis added). We may presume that the same words used in different parts of a writing have the same meaning (*Matter of Albano v Kirby*, 36 NY2d 526).

The language of the last sentence of the subrogation clause also reinforces this interpretation. That sentence makes it clear that the previous sentence, relied upon by the trial court, accords priority only to mortgages placed for permanent financing, not to mortgages placed for the purpose of obtaining mortgages for permanent financing. The last sentence reads: "It is agreed * * * that the subordination herein granted shall subordinate the lien of this mortgage and the debt which it secures, to *the* mortgages placed for *such* permanent financing and to all increases, consolidations and modifications thereof" (emphasis added). The use of the definite article "the" modifying the word "mortgages", and the adjective "such" modifying the words "permanent financing" can only relate back to and define the words "mortgages" and "permanent mortgage financing" appearing in the previous sentence.

The interpretation we give to the subordination clause accords with the common practice in construction financing. It is the usual practice to finance building construction first by a building loan agreement and building loan mortgage and, when the building is completed, to replace the building loan and mortgage with permanent financing. It is usual, therefore, for mortgages given to secure the purchase price of lands to contain a subordination clause, subordinating the mortgage to subsequent building loan mortgages and to mortgages given to secure permanent financing. The language of the subordination clause in this case is entirely consistent with this common practice. The clause is similar to that in *York Mtge. Corp. v Clotar Constr. Corp.* (254 NY 128, 138, *supra*) where the court construed the clause "[r]ead as a whole" as granting prior-

ity only to "(a) a building loan mortgage to raise funds to erect buildings, or (b) a permanent first mortgage on the lands and buildings when the buildings are erected or their erection has begun. Any other construction would leave the [prior mortgagee] at the mercy of the subsequent owners of the property."

Accordingly, the judgments of foreclosure should be modified by providing that the lien of the prior mortgage, now held by Scutti, is entitled to priority over the lien of the subsequent mortgage, now held by Finest Investments.

HANCOCK, JR., J. P., CALLAHAN, DENMAN and MOULE, JJ., concur.

Judgments unanimously modified, and as modified, the judgments and order affirmed, with costs, to plaintiff Scutti, in accordance with opinion by BOOMER, J.