■ DIANE POLITO, Also Known as NORA D. POLITO, Appellant, v GAETANO POLITO, Respondent.—In an action, *inter alia,* for the rescission and cancellation of a release signed by the plaintiff and the reformation of a deed to the parties' former residence, the plaintiff appeals from a judgment of the Supreme Court, Kings County (Ramirez, J.), entered June 15, 1984, which, after a nonjury trial, dismissed the complaint.

Judgment reversed, on the law and the facts, with costs, complaint reinstated, and matter remitted to the Supreme Court, Kings County, for entry of an appropriate judgment in favor of the plaintiff, rescinding the release and reforming the deed to reflect that the parties own the property in question as joint tenants.

In order to maintain a claim of duress, the aggrieved party must demonstrate that threats of an unlawful act compelled

his or her performance of an act which he or she had the legal right to abstain from performing *(Gerstein v 532 Broad Hollow Rd. Co.,* 75 AD2d 292). Additionally, the threat must be such as to deprive the party of the exercise of free will *(see, Muller Constr. Co. v New York Tel. Co.,* 40 NY2d 955; *Baratta v Kozlowski,* 94 AD2d 454). We conclude, contrary to the findings of the trial court, that the record contains ample evidence of duress suffered by the plaintiff in the procurement of her signature to the release.

The parties, who were married in 1973, purchased the subject residence in June 1979 with joint funds. At the time of the purchase, it was the plaintiff's belief that they owned the house jointly. The parties thereafter shared expenses and household duties.

The plaintiff testified to having been subjected to acts of abuse by the defendant culminating in a particularly violent episode in January 1980. In the course of being viciously beaten by the defendant, the plaintiff learned that he had sexually abused her daughter as well. The plaintiff thereupon left the marital residence and was later found wandering in the streets by a friend who directed her to a shelter for battered women. Shortly thereafter, she learned that her name had been omitted from the deed conveying title to the residence to the defendant. The plaintiff did not retain an attorney at this time due to her inability to afford one.

This pattern of physical abuse and violence continued. The plaintiff's testimony in this regard is undisputed by the defendant. The defendant once coerced the plaintiff into indorsing the parties' 1979 income tax refund by physically twisting her arm, battering her about and kicking her. In June 1980 the plaintiff's roommate moved out of the house which they had shared. The defendant thereafter began to come to the plaintiff's residence unannounced. He threatened her with pornographic pictures which he had taken of her during their marriage. During this interval, the defendant physically abused the plaintiff and forced himself upon her sexually. At one point, he nearly broke her arm with the result that the plaintiff was very frightened of the defendant. During the month of July 1980 the plaintiff was forced to telephone the police on several occasions. Against this background, the defendant began to pressure the plaintiff to release any claims she might have to the house. In return for this, the defendant agreed to give the plaintiff $11,500 and "call it quits".

In late July 1980 the plaintiff found a copy of a Texas divorce decree and ascertained that the parties had been

divorced, pursuant to that decree, since 1977. The defendant thereafter increased the intensity of his threats. On or about August 1, 1980, the defendant forced his way into the plaintiff's residence, pulled her down a staircase and, when she went to telephone the police, pulled her telephone out of the wall. Some five days later, the plaintiff signed the general release which she now seeks to rescind.

Between his last assault upon the plaintiff and her execution of the release, the defendant continued to pass by her residence and to telephone her with the promise that once the release was signed, he would leave her alone. On August 6, 1980, the plaintiff appeared in the office of the defendant's counsel for the purpose of signing the release. In return for her signature, the sum of $1,700 was proffered to the plaintiff. When she telephoned the defendant to protest this variation from their agreement, the defendant advised the plaintiff to sign or else he would "have to come up there and help" her. Fearing further physical abuse, the plaintiff succumbed to the defendant's threats.

Subsequent to signing the release, the plaintiff received psychiatric treatment at various hospitals. Her initial hospitalization emanated from a suicide attempt.

The testimony of Barbara Kass, the plaintiff's friend and registered nurse and certified social worker, as well as that of the plaintiff's brother and daughter established that the plaintiff's mental and physical condition began to deteriorate from June 1980 until August 1980.

On these facts, we conclude, notwithstanding the opinion of the defendant's expert that the plaintiff was competent to sign the release, that the conduct of the defendant overcame the plaintiff's judgment to such an extent that her execution of the release was not a product of her free will. Nor can the plaintiff be found to have ratified the release executed under duress by her subsequent acts or omissions. Under the special circumstances of this case, particularly the plaintiff's attempted suicide and her subsequent hospitalizations, a court of equity could not reasonably find a ratification of the agreement which she signed under severe threats. The fact that the plaintiff failed to initiate an action for rescission for some 18 months and failed to return the consideration she received for the release is not fatal to her case. "A party who has received benefits by reason of a transaction that is void or voidable because of fraud, misrepresentation, mistake, duress, infancy or incompetency, and who, in an action or by way of defense

or counterclaim, seeks rescission, restitution, a declaration or judgment that such transaction is void, or other relief, whether formerly denominated legal or equitable, dependent upon a determination that such transaction was void or voidable, shall not be denied relief because of a failure to tender before judgment restoration of such benefits" (CPLR 3004).

Courts are endowed with discretion to make the tender of restoration of benefits a condition of judgment or to otherwise adjust the equities between the parties so as to avoid unjust enrichment *(D'Angelo v Hastings Oldsmobile,* 89 AD2d 785, *affd* 59 NY2d 773). On these facts, the plaintiff is entitled to equitable rescission of the release and to a reformation of the deed to the property in question to reflect that the parties own the property in question as joint tenants. Mollen, P. J., Weinstein, Rubin and Spatt, JJ., concur.