■ ANDREW MAYER et al., Appellants, v GEORGE F. BISHOP et al., Respondents.—Yesawich, Jr., J.

Plaintiffs, Andrew Mayer and Elfrieda Mayer, residents of Brooklyn, first met defendants, George F. Bishop and Cora J. Bishop, at a laundromat in Vermont in 1982. Following that meeting, the Bishops rented the Mayers' Vermont summer camp for about one year at a rental of $125 per month. For one half of this time, the Mayers permitted the Bishops to live in the house rent free because Mr. Bishop had lost his job. Thereafter, the Bishops moved to Heuvelton in St. Lawrence County where they resided on farm premises owned by Mr. Bishop's father. The Mayers continued to live in Brooklyn with Mr. Mayer's parents, both of whom were in their 90's. The parties remained in close contact despite the distance separating them. In January 1984, Mrs. Mayer underwent spinal surgery. During her recovery period, she and Mrs. Bishop discussed the possibility of the Mayers moving to Heuvelton where the Bishops could help care for them.

This aspiration eventually became a reality. In July 1984, the Bishops and their cousin, Gilbert Bishop, visited the Mayers in their Brooklyn home. During this visit, the Mayers entered into a $73,000 construction contract with Gilbert Bishop and received an unsigned deed to one acre of farmland from the Bishops; the Bishops obtained title to the premises from Mr. Bishop's father on the same day they conveyed the premises to the Mayers. Later that day, the Mayers signed the deed in the presence of a notary public and mailed it to the Bishops.

In October 1984, Mrs. Mayer traveled to Heuvelton to visit the Bishops and see how the construction of their new home was progressing. Although Mrs. Mayer discovered that the house was not being built at the location she had originally selected, she advanced additional funds to the builder. During

this visit, Mr. Bishop furnished Mrs. Mayer with a copy of the deed. A clause in the deed provided: "That upon the death of the survivor of the [Mayers] the premises described herein and all improvements thereon shall revert to and become the property of the [Bishops] at no cost or expenses to the [Bishops]. * * * The [Mayers], by signing this deed consent to be bound to the reversion of said property along with all improvements thereon to the [Bishops]."

Mr. and Mrs. Mayer, then respectively 73 and 67 years of age, with the Bishops' assistance, moved into their new home in November 1984. During the ensuing two years, the Bishops further helped the Mayers by shopping for groceries, chauffering, removing garbage, splitting wood, cleaning their home and shoveling snow.

In 1986, the Mayers commenced this action, the thrust of which is to obtain a modification of the deed. The Mayers seek to prevent the Bishops from being unjustly enriched and to give full force and effect to what the Mayers claim was the parties' intention, namely, that to effect the reversion upon the death of the survivor of the grantees, the Bishops were to pay the survivor's estate an amount equal to the total cost of constructing the house. The Bishops counterclaimed alleging that the action brought by the Mayers constituted an abuse of judicial process. Following a nonjury trial, Supreme Court dismissed both the complaint and the counterclaim.

Notwithstanding the Mayers' contrary assertion, Supreme Court's finding, that the deed was complete at the time that the Mayers signed it, is amply borne out by the evidence. Particularly convincing is the testimony of the attorney who prepared the deed in question. The court found this witness to be "clear and precise * * * [and] most credible". As Supreme Court had the advantage of seeing all the witnesses testify, its evaluation of their relative credibility is entitled to great weight (see, Northern Westchester Professional Park Assocs. v Town of Bedford, 60 NY2d 492, 499; York Mtge. Corp. v Clotar Constr. Corp., 254 NY 128, 133-134; see also, Matter of Liccione v John H., 65 NY2d 826, 827). Beyond that, we note that the record discloses that even though Mrs. Mayer purportedly "discovered" the reversionary clause in October 1984, the Mayers nevertheless moved to Heuvelton one month later, continued a close association with the Bishops and waited more than two years to bring this suit. In short, we are of the view that Supreme Court made a reasonable assessment of all the evidence.

The Mayers do, however, argue persuasively that the rever-

sionary clause unjustly enriches the Bishops, and therefore this court in equity should modify the deed. In support of their claim, the Mayers highlight Supreme Court's finding that the deed is "one-sided from a monetary point of view". Although Supreme Court did not expressly address plaintiffs' unjust enrichment claim, it suggested that the Mayers received nonmonetary benefits in consideration for the exchange. Yet, the parties do not dispute that the Bishops were monetarily compensated for much of the assistance they provided to the Mayers, whether it was for moving, house cleaning, snow removal, shopping, chauffering or wood-splitting services. Thus, the only consideration the elderly Mayers received for this one-sided deed was life estates in one acre of vacant, essentially valueless property, farmland which the Bishops' own real estate expert indicated was not rentable. More than $80,000, which ultimately proved to be the cost of the construction contract, is an inordinately high price to pay to acquire such property interests.

We are aware that to prove an unjust enrichment claim more is required than simply showing that one party received a benefit *(see,* Restatement [Second] of Restitution § 1, comment c), that the enrichment must be such that in equity and good conscience its retention would be unjust *(see, Paramount Film Distrib. Corp. v State of New York,* 30 NY2d 415, 421, *mod on other grounds* 31 NY2d 678, *cert denied* 414 US 829), and to determine whether there has indeed been unjust enrichment the inquiry must focus on the "human setting involved" *(McGrath v Hilding,* 41 NY2d 625, 629), not merely upon the transaction in isolation *(supra).* Here, the record indicates that the completed residence cost more than they intended, but was appraised at only $56,000, considerably less than they had a right to expect, because of deficiencies in the construction. And the builder who had been recommended to the Mayers by the Bishops, the latters' cousin, had never before constructed a house. The Mayers were elderly and ill. English was not Mrs. Mayer's first language; at trial she had difficulty responding to relatively uncomplicated questions. Further, the Bishops knew that she had handled this complicated transaction alone because her husband was incapable of helping. She placed her trust in the Bishops in light of the parties' close friendship. Although Supreme Court found, and we agree, that the Bishops did not coerce the Mayers into signing a blank deed, it is not a prerequisite of an unjust enrichment claim that the one enriched commit a wrongful or unlawful act *(see,* 22 NY Jur 2d, Contracts, § 449, at 380; *Simonds v Simonds,* 45 NY2d 233, 242).

We conclude that under the circumstances of this transaction and the relationship of these parties *(see, Tordai v Tordai,* 109 AD2d 996, 997), permitting the deed to retain an uncompensated reversionary interest would unjustly enrich the Bishops. In situations where the defendant receives a benefit, but the plaintiff's loss is difficult to measure, proper restitution is the amount by which the defendant is enriched *(see,* 22 NY Jur 2d, Contracts, § 449, at 383). In our judgment, equity dictates that the deed be reformed to provide that the property and all improvements thereon are to revert to the Bishops if they compensate the surviving Mayer's estate for the fair market value of the property at the time of the transfer *(see, Polito v Polito,* 121 AD2d 614, 617, *lv dismissed* 68 NY2d 981; *cf., Plotnikoff v Finkelstein,* 105 AD2d 10, 12-14), or for the cost to the Mayers of erecting the house thereon, whichever is the lesser; this latter alternative comports with the Mayers' assertion that the Bishops were to have the right to repurchase, but at an amount equal to the cost incurred by the Mayers to construct their new home.

Judgment modified, on the facts, without costs, by directing that the deed be reformed in accordance with this court's decision, and, as so modified, affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.