■ ANNE JUSZAK, Appellant, v LILY & DON HOLDING CORP. et al., Defendants, and AUGUST SCHULZE, Respondent. (And an Intervenor Action.) [639 NYS2d 403] —In an action, *inter alia,* to foreclose a mortgage, the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Murphy, J.), entered June 3, 1994, which, among other things, declared that the mortgage held by the plaintiff was subordinate to the mortgage held by the defendant August Schulze.

Ordered that the judgment is affirmed, with costs.

The Supreme Court correctly found that the loan from the plaintiff to the defendant Lily & Don Holding Corp., an entity controlled by Lily and Don Charnin (hereinafter collectively the Charnin defendants), was not a construction loan. Therefore, the plaintiff's mortgage did not acquire priority over a prior purchase money mortgage extended by the defendant August Schulze to Lily & Don Holding Corp. pursuant to the terms of a subordination clause contained in Schulze's mortgage.

A classic building loan mortgage is characterized, *inter alia,* by (1) a requirement in the loan agreement that the mortgagor

construct a building or improvement with the loan and (2) a disbursement of the loan in installments—as the construction progresses—rather than in one lump sum (*see, e.g.,* Lien Law § 2 [13], [14]; *York Mtge. Corp. v Clotar Constr. Corp.,* 254 NY 128; *Weaver Hardware Co. v Solomovitz,* 235 NY 321; *Finest Invs. v Security Trust Co.,* 96 AD2d 227, *affd* 61 NY2d 897). Indeed, a construction mortgage is defined as "one obtained for the purpose of financing construction, under which the mortgagee is empowered and *obligated* to disburse the funds to the builder or contractor as the construction progresses" (55 Am Jur 2d, Mortgages, § 14, at 203; emphasis supplied). A purchase money mortgagee is willing to subordinate his or her loan to a construction loan only because he or she expects that the development of the property will enhance his or her security, even in a subordinated position.

The purported construction mortgage at bar contained no requirement that anything be built on the subject parcel (so that Schulze would not have intended to subordinate his purchase money mortgage to it), and its proceeds were advanced in a single lump sum. The amount actually received by Lily & Don Holding Corp. was $91,957.61, notwithstanding that the projected construction costs matched the secured loan amount of $160,000. Neither the plaintiff nor the Charnin defendants have offered any explanation for this discrepancy. Under such circumstances, the mortgage at issue was not a bona fide construction mortgage (*see, e.g., York Mtge. Corp. v Clotar Constr. Corp., supra; Finest Invs. v Security Trust Co., supra*).

Finally, a variety of anomalies tainted the transaction between the plaintiff and the Charnins. For example, the promissory note was executed by "Charnin Building Corp." rather than by "Lily & Don Holding Corp.", which owned the property, and the guarantees executed by Lily and Don Charnin individually to secure the loan also indicated that the loan had been made to "Charnin Building Corp." In addition, although someone had scrawled "This is a construction mortgage" at the end of the mortgage, the plaintiff's attorney Dubow, who had prepared the deeds, did not know who had written it. Moreover, there is no indication in the record that Schulze, as the first or purchase money mortgagee, received any notice of the Charnins' intention to take out a second, "construction" mortgage. These so-called "mistakes" in fact reveal that the Charnins were prepared to promise the plaintiff anything in order to obtain the loan and that the plaintiff, in turn, "was willing to take a mortgage on the land and to speculate

whether it might turn out to be a building loan mortgage entitled as such to priority rather than a second mortgage on the land, which in truth it turned out to be" (*York Mtge. Corp. v Clotar Constr. Corp., supra,* at 138). Thompson, J. P., Friedmann, Krausman and Florio, JJ., concur.