■ HOWARD SAVINGS BANK, Respondent, v LEFCON PARTNERSHIP, Defendant and Third-Party Plaintiff, et al., Defendants, and MITSUBISHI TRUST AND BANKING CORPORATION, Respondent. E.W. HOWELL CO., INC., Third-Party Defendant-Appellant. [618 NYS2d 910] —In an action to foreclose a mortgage, the third-party defendant E.W. Howell Co., Inc., appeals (1) from an order of the Supreme Court, Nassau County (O'Shaughnessy, J.), entered April 18, 1991, which (a) granted the motion of the plaintiff Howard Savings Bank and Mitsubishi Trust and Banking Corporation for partial summary judgment dismissing the appellant's first counterclaim and the appellant's first cross claim, (b) denied the appellant's cross motion for summary judgment against Howard Savings Bank and Mitsubishi Trust and Banking Corporation, and (c) declared that the appellant's lien on the subject real estate was subordinate to the mortgage lien by Howard Savings Bank and Mitsubishi Trust and Banking Corporation, and (2) as limited by its brief, from so much of an order of the same court, entered June 28, 1991, as, upon renewal and reargument, adhered to the original determination.

Ordered that the appeal from the order entered April 18, 1991, is dismissed, as that order was superseded by the order entered June 28, 1991, made upon renewal and reargument; and it is further,

Ordered that the order entered June 28, 1991, is affirmed insofar as appealed from; and it is further,

Ordered that the respondents are awarded one bill of costs.

The appellant E. W. Howell Construction Corp. (hereinafter Howell) served as the general contractor on a project known as the Wyndam East and Wyndam West, a 316-unit condominium complex located in Garden City. The developer, the Lefcon Partnership (hereinafter Lefcon), had obtained a building construction loan which allocated some $67,500,000 to the so-called "hard construction" costs of the project. Pursuant to Lien Law § 22, the lender, the Howard Savings Bank (hereinafter the Bank) and Lefcon filed with the County Clerk a building loan agreement, the mortgage, and various other documents detailing the amount of the loan and the various terms of the agreement, including terms relating to the Bank's obligation to fund the project, the conditions of that obligation, and the rights and remedies available to both Lefcon and the Bank in connection with the loan. Howell agreed to perform the construction work for $67,850,000.

After the project encountered financial difficulties, the Bank and its loan participant, Mitsubishi Trust and Banking Corporation (hereinafter Mitsubishi), declared Lefcon to be in default in connection with the building loan agreement, and subsequently commenced the instant foreclosure action. Howell was named a third-party defendant in the foreclosure action by Lefcon and later interposed an answer containing a "first counterclaim and cross claim" against the Bank and Mitsubishi, which sought, inter alia, to foreclose on a mechanic's lien in an amount in excess of $8,200,000, the sum representing labor and materials which Howell had supplied to the project and for which it had received no payment.

In its pleading, Howell alleged, among other things, that the Bank violated Lien Law § 22 by filing a false and incomplete building loan agreement, and thereafter, by failing to provide written notice of alleged modifications to that agreement. As a consequence, Howell alleged that its lien should be accorded priority over the Bank's first mortgage.

The Supreme Court rejected Howell's arguments, and granted partial summary judgment to the Bank declaring that Howell's mechanic's lien was subordinate to the Bank's first mortgage. Upon Howell's motion for reargument and renewal, the court adhered to its original determination. We affirm.

Lien Law § 22 provides, in pertinent part, that a building loan agreement, as well as any modification thereof, must be

in writing and must show the consideration paid for the loan, all related expenses incurred or to be incurred in connection with the loan, "and the net sum available to the borrower for the improvement". Amendments to the agreement "must be filed within ten days after the execution of any such modification." Noncompliance with the disclosure mandate of Lien Law § 22 results in the subordination of the Bank's mortgage to the liens subsequently filed by those who provided services and materials in connection with the project *(see, Nanuet Natl. Bank v Eckerson Terrace,* 47 NY2d 243).

The underlying purpose of Lien Law § 22 is to permit contractors and subcontractors to ascertain how much money will be made available to the owner in connection with the project and thus, the ability of the owner to pay for any services and materials provided *(see, Nanuet Natl. Bank v Eckerson Terrace, supra; HNC Realty Co. v Bay View Towers Apts.,* 64 AD2d 417). This Court has held that a Lien Law notice is required only with respect to "material" modifications of the agreement *(see, HNC Realty Co. v Bay View Towers Apts., supra,* at 426). A modification of a building loan agreement is " 'material' if it: (1) alters the rights and liabilities otherwise existing between the parties to the agreement or (2) enlarges, restricts or impairs the rights of any third party beneficiary" *(HNC Realty Co. v Bay View Towers Apts., supra,* at 426).

On appeal, Howell argues, *inter alia,* that the instant building loan agreement obligated the Bank to ensure that the loan proceeds would "always" be sufficient to complete the project, and that since the Bank allegedly knew from the inception that the project was underfunded by some $10,000,000, the loan agreement was misleading and false when filed. Howell further asserts that, although the Bank was aware that the undisbursed loan proceeds were purportedly insufficient to complete the project, and that Lefcon was unwilling or unable to fund the shortfall, the Bank should have, but did not, file modifications to the original loan agreement giving notice of these occurrences. Howell also contends that the Bank modified the agreement without filing a Lien Law notice when it did not hold Lefcon in default on several occasions during the course of the project even though the agreement would have permitted it to do so. According to Howell, the Bank's failure to file modifications to the agreement in light of these developments deprived it of the knowledge that there were insufficient funds to complete the job and thus the ability to make a judgment as to whether to continue working on the project.

Contrary to Howell's suggestions, the disclosure contemplated by the Lien Law is not intended to function as a guarantee that a construction project is adequately financed or economically viable. Nor does the Lien Law impose upon a lender a continuing duty to apprise a contractor of the economic condition of its borrower. Rather, it is intended to provide information for the benefit, *inter alia,* of contractors, materialmen, laborers, as to the net sum of the building loan available for the project *(see, Nanuet Natl. Bank v Eckerson Terrace, supra,* 47 NY2d, at 247). That function was performed in this case.

Moreover, the provisions of the agreement on which Howell presently relies with respect to the funding of the project outline rights and obligations of Lefcon and the Bank. There is nothing in the agreement which supports Howell's claim that it possesses the status of a third-party beneficiary in connection with these provisions. To the contrary, the agreement specifically provides that, "[a]ll conditions to the obligations of Bank to make Advances hereunder are imposed solely and exclusively for the benefit of Bank * * * and no other person or entity shall have standing to require satisfaction of such conditions * * * [or] be deemed to be the beneficiary of such conditions".

In any event, the agreement does not require the Bank to advance funds beyond its original loan commitment or impose the type of full funding guarantee that Howell reads into the document; nor does it contain a representation that the project could be completed for the loan amount—or for any particular sum. Further, the agreement does not obligate the Bank to seek additional funding from the developer so as to make up any shortfalls which might occur, or to invoke any of its contractual remedies in the event the developer is unable to contribute additional funds to the project. Rather, the agreement merely indicates in relevant part that the Bank would, subject to various contingencies, make the agreed-upon loan proceeds available to Lefcon in order to facilitate construction of the project. Indeed, the agreement fully disclosed the range of options the Bank possessed in connection with the funding of the project and the various contingencies under which the Bank could terminate or suspend the making of advances. To be sure, the agreement confers upon the Bank various options in connection with the funding of the project and also empowers it to take certain actions in the event the developer defaults in its obligations. However, the agreement does not require the Bank to exercise any particular option in

pursuing its rights under the agreement. Accordingly, the Bank's decision to exercise—or to refrain from exercising—the rights it possessed under the agreement cannot be described as a modification within the meaning of the Lien Law (cf., In re Grossinger's Assocs., 115 Bankr 449, 452-453).

Howell's additional claim with respect to the Bank's alleged improper release of portions of the approximately $4,000,000 in funds which it had purportedly withheld from Howell's progress payments during the course of the job is conclusory and unsubstantiated. We note that there is nothing in Howell's pleadings which sets forth a cause of action or alleges facts relative to the alleged release of funds retained by the Bank. Moreover, Howell submitted nothing of a persuasive nature in support of the retainage claim in opposition to the original motion for summary judgment and its own cross motion for summary judgment.

Nor was the proof submitted by Howell upon renewal and reargument, sufficient to create material issues of fact. The evidence submitted by Howell principally consisted of a post-litigation letter, dated February 27, 1991, from Lefcon's chief financial officer, Irving Schoenfeld, to Lefcon's counsel, in which Schoenfeld made an elliptical reference to a March 1989 requisition for payment as "the first point at which funds that could have been retained by Howard were used to pay for change orders".

We agree with the Supreme Court that the Schoenfeld letter, and its reference to "funds" which "could" have been retained, is lacking in evidentiary value, inasmuch as it at best, "reflects the conclusory speculative opinion of an officer of the borrower". Schoenfeld's letter contains no indication that his statements were premised upon personal knowledge of the Bank's loan records, or, for that matter, precisely what the factual basis of his knowledge was. Moreover, in a subsequently filed affidavit, Schoenfeld himself confirmed that he lacked personal knowledge of the accounting information, indicating instead that he was merely repeating statements allegedly made to him at some unspecified date by a bank officer during a telephone conversation. Schoenfeld's description of these telephone conversations is not only conclusory and bereft of factual background; his affidavit contains no explanation of where or how the Bank officer himself obtained knowledge, and what role, if any, the officer played in connection with the management of the loan. Further, while Howell relies upon an unsigned letter dated October 11, 1989, in which a Bank official suggests that funds retained had been

released, Mr. Schoenfeld himself specifically asserted that this letter was a draft which was never sent to, or received by, Lefcon.

Although the foregoing alone establishes that Howell's application for renewal and reargument with respect to the retainage issue was properly rejected, Schoenfeld's assertions that retainage had been released in March 1989 were undermined by contemporaneous letters written by Lefcon's principal Lewis Feldman and Schoenfeld himself. Specifically, in a letter to the Bank dated September 25, 1989, Feldman stated that "the simplest way to meet" Lefcon's financial needs "would be to fund these requirements from the $4,000,000 retainage currently available in the construction loan". Similarly, in a letter dated October 10, 1989, Schoenfeld himself requested that the Bank release its "$4,000,000 retainage" for the same purpose. Under the circumstances, we conclude that the Supreme Court properly adhered to the original determination, both in connection with the retainage claim and the additional issues raised upon the motion.

We have reviewed Howell's remaining contentions and find them to be without merit. Thompson, J. P., Sullivan and Friedmann, JJ., concur.

Ritter, J., concurs in part and dissents in part and votes to dismiss the appeal from the order entered April 18, 1991, and to modify the order entered June 28, 1991, to deny summary judgment in favor of the plaintiff, Howard Savings Bank, with the following memorandum: My only disagreement with the well-reasoned analysis of my colleagues here concerns the majority's disposition with regard to the retainage issue. In my view, the conflicting evidence in the record sufficiently raises a genuine and material issue of fact; i.e., whether the defendant, Howard Savings Bank (hereinafter the Bank) improperly disbursed retainage for the payment of change orders, a use that is not authorized under the filed building loan agreement.

The Bank's position on this key factual issue is not at all clear. Indeed, during oral argument of the various applications before the Supreme Court, counsel for the Bank virtually conceded that there was a question as to whether retainage had been released early. Additionally, the appellant's attorneys requested permission to conduct further discovery, prior to a final disposition of the motions, contending that this was necessary to properly rebut the Bank's position, and support its own retainage claims. Although certain of the

documents which purportedly support the appellant's position have little probative value standing alone, specific individuals allegedly involved in the pertinent transactions and employed by the Bank have been identified in the motion papers. These individuals seemingly have personal knowledge of key facts, or have access to reliable information on the retainage issue, and Howell should be given the opportunity to examine them under oath.

I further disagree with the Supreme Court's conclusion that the Bank was, in any event, entitled to release the retainage under the terms of the building loan agreement. The court's conclusion was based on the Bank's contractual right to enter into the premises upon the developer's default, and to use any unadvanced funds to complete the project. Although the developer allegedly had been in default and the Bank arguably could have taken over possession and control of the project, it never exercised this remedy. Instead, the Bank allowed the developer to remain in possession and allegedly entered into a secret agreement modifying the building loan agreement by allowing funds earmarked as retainage, and designed to secure payment for materials and labor already provided by the appellant, to be used to fund change orders. If this alleged agreement in fact occurred, and resulted in a substantial reduction of funds which the appellant and other mechanic's lienors reasonably expected would be available upon the completion of the project, I believe a supplemental filing was mandated under Lien Law § 22 *(see, Security Natl. Bank v Village Mall,* 85 Misc 2d 771, 787). Under the circumstances, I believe the appellant has asserted a viable claim that its lien is superior to the Bank's and it should be given the opportunity to uncover facts in support of its position which are in the exclusive knowledge of the Bank and the developer.