■ Pawling Savings Bank, Appellant, v Jeff Hunt Properties, Inc., et al., Defendants, and L.J.A. Realty Associates, Inc., Respondent. [639 NYS2d 462]

The plaintiff claims that the mortgage it holds on the property in question is superior to the mortgage held by the defendant L.J.A. Realty Associates, Inc. (hereinafter L.J.A.). Although L.J.A.'s mortgage was recorded first, the plaintiff claims that its mortgage is superior based upon a subordination clause contained in L.J.A.'s mortgage which provides: "THIS MORTGAGE SHALL BECOME SUBORDINATE TO ANY LAND SITE DEVELOPMENT MORTGAGE AND/OR ANY CONSTRUCTION LOAN OR MORTGAGE HEREINAFTER PLACED AGAINST THE PROPERTY HEREIN". According to the plaintiff, its mortgage is a building loan mortgage. The mortgage held by the plaintiff was in the face amount of $350,000 and was made pursuant to a building loan contract, which provided that the funds were to be disbursed "in such amounts and installments, as the work upon said building and improvement progresses".

The Supreme Court correctly held that the plaintiff's mortgage was not a building loan mortgage within the meaning of the subordination clause. A building loan agreement is "an agreement by which one undertakes to advance to another money to be used primarily in the erection of a building and not merely to pay existing mortgages and bonuses to the lender for making the loan" (York Mtge. Corp. v Clotar Constr. Corp., 254 NY 128, 137). Such an agreement is one to provide " 'a loan for the purpose of erecting a building and to be advanced in installments from time to time as might be rendered safe by the condition of the building' (Weaver Hardware Co. v Solomovitz, 235 NY 321, 333-334)" (Finest Inv. v Security Trust Co., 96 AD2d 227, 229, affd 61 NY2d 897). Here, the plaintiff advanced at the closing, prior to the commencement of any construction, a sum of $300,000 for "reimbursement land acquisition". The remaining $50,000 was never disbursed. Indeed, $206,739.16 was used to satisfy an existing mortgage on the property which was held by Whites Corners Co., Inc. (hereinafter Whites Corners). Although the building loan contract provided that the money was to be advanced in installments, the plaintiff did not comply with that provision.

Alternatively, the plaintiff asserts that it is entitled to be subrogated to the rights of Whites Corners because it satisfied that mortgage, which was superior to the mortgage held by L.J.A. The Supreme Court properly declined to exercise the equitable remedy of subrogation. The doctrine of equitable subrogation applies "where the funds of a mortgagee are used to satisfy the lien of an existing, known incumbrance when, unbeknown to the mortgagee, another lien on the property exists which is senior to his but junior to the one satisfied with his funds. In order to avoid the unjust enrichment of the intervening, unknown lienor, the mortgagee is entitled to be subrogated to the rights of the senior incumbrance" *(King v Pelkofski,* 20 NY2d 326, 333-334; *see also, Zeidel v Dunne,* 215 AD2d 472, 473; *Boston Trade Bank v Kuzon,* 154 Misc 2d 217). The plaintiff concedes that mortgage held by L.J.A. was a known lien. Notwithstanding that concession, the plaintiff alleges that the doctrine should be applied because it mistakenly believed that it would acquire superior lien status, based upon the subordination clause. We find this belief to be unreasonable in light of our determination that the plaintiff's mortgage was not a building loan mortgage within the meaning of the subordination clause. Miller, J. P., Hart, Friedmann and Florio, JJ., concur.