OPINION OF THE COURT
Anil C. Singh, J.
In this action for, inter alia, breach of fiduciary duty and trust fund diversion, plaintiffs move for a declaratory judgment (i) directing the defendants to account for all trust assets received relating to the projects; (ii) seeking damages for the costs of labor, materials and services furnished in the performance of the contracts related to the improvement of the projects; and (iii) directing the defendants that the mechanic’s liens have priority over Bank Leumi USA’s liens and/or claims against the HAP2 and HAP3 projects. In motion sequence No. 001, defendant Bank Leumi opposes and cross-moves for an order dismissing plaintiffs’ claims pursuant to CPLR 3211 (a) (1) for defenses founded upon documentary evidence, CPLR 3211 (a) (4) on the basis that there is another action pending between the same parties for the same cause of action, and CPLR 3211 (a) (7) for failure to state a cause of action. In motion sequence No. 002, defendants 2338 Second Avenue Mazal LLC, 167th Street Mazal LLC, Eran Polack, Amir Hasid, and Nir Am sel oppose and cross-move for an order dismissing plaintiffs’ claims pursuant to CPLR 3211 (a) (1) for defenses founded upon documentary evidence, CPLR 3211 (a) (4) on the basis that there is another action pending between the same parties for the same cause of action and CPLR 3211 (a) (8) for lack of jurisdiction.[1] Plaintiffs cross-move pursuant to Lien Law §§ 73 and 77 (3) (a) (i) for an interim accounting and CPLR 602 for consolidation. Motion sequence No. 001 and No. 002 have been consolidated for purposes of this decision and order.
Facts
MLF3 Airitan LLC, as assignee of Airitan Management Corp., and MLF3 DC LLC, as assignee of Danya Cebus Construction, LLC (collectively, plaintiffs), commenced this declaratory judgment and Lien Law article 3-A trust fund diversion action for an accounting and to recover damages against 2338 Second Avenue Mazal LLC, 167th Street Mazal LLC, Eran Polack, Amir Hasid, Nir Amsel, Bank Leumi USA, and John Doe numbers 1 through 10 (collectively, defendants).
*244 The claim relates to the real properties located at 2338 Second Avenue, New York, New York (the HAP2 project) and 446-448 West 167th Street, New York, New York (the HAP3 project). Airitan Management Corp. (Airitan) entered into a contract to perform construction management services and furnish labor and materials for the construction of a new residential building at both the HAP2 project and HAP3 project sites. Danya Cebus Construction, LLC (Danya) joined Airitan as construction manager on these projects. Due to various delays with the project allegedly caused by defendants 2338 Second Avenue Mazal LLC and 167th Street Mazal LLC, both Airitan and Danya filed mechanic’s liens against the projects.[2] Airitan subsequently assigned its rights in the liens to plaintiff MLF3 Airitan LLC, while Danya assigned its liens to plaintiff MLF3 DC LLC.
Plaintiffs seek a declaratory judgment that the mechanic’s liens have priority over Bank Leumi’s liens due to the bank’s alleged failure to file a proper notice of lending for the HAP3 building loan agreement under section 22 of the Lien Law. (See complaint ¶¶ 103-107.) Plaintiffs are also seeking a declaratory judgment that the mechanic’s liens have priority over Bank Leumi’s liens based on the allegation that the bank consented to material modifications of the HAP2 and HAP3 building loan agreements and failed to timely file amended Lien Law § 22 affidavits for the loans. (See complaint ¶¶ 109, 114-117.) Finally, plaintiffs seek a declaratory judgment that the mechanic’s liens have priority over the aggregate amount of all advances made by Bank Leumi pursuant to the making of HAP2 and HAP3 advances by Bank Leumi after the filing of each of the mechanic’s liens. (See complaint ¶¶ 121-122.)
Plaintiffs have filed a cross motion claiming that they are entitled to an interim accounting pursuant to Lien Law §§73 and 77 (3) (a) (i). Plaintiffs also contend that if the court finds that the facts, legal issues, and parties in the two actions are sufficiently similar, consolidation pursuant to CPLR 602 rather than dismissal pursuant to CPLR 3211 (a) (4) is appropriate.
*245 Analysis
Standard for a Motion to Dismiss
On a motion to dismiss based on the ground that the defenses are founded upon documentary evidence pursuant to CPLR 3211 (a) (1), the evidence must be unambiguous, authentic, and undeniable. (See Fontanetta v John Doe 1, 73 AD3d 78 [2d Dept 2010].) “To succeed on a [CPLR 3211 (a) (1)] motion ... a defendant must show that the documentary evidence upon which the motion is predicated resolves all factual issues as a matter of law and definitively disposes of the plaintiff’s claim.” (Ozdemir v Caithness Corp., 285 AD2d 961, 963 [3d Dept 2001], lv denied 97 NY2d 605 [2001].) Alternatively, “documentary evidence [must] utterly refute[ ] plaintiff’s factual allegations, conclusively establishing a defense as a matter of law.” (See Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002].)
On a motion to dismiss a complaint where there is another action pending between the same parties for the same cause of action in a court of any state pursuant to CPLR 3211 (a) (4), a court has broad discretion in determining whether an action should be dismissed. (See Whitney v Whitney, 57 NY2d 731, 732 [1982]; Scottsdale Ins. Co. v Indemnity Ins. Corp. RRG, 110 AD3d 783, 784 [2d Dept 2013]; Kent Dev. Co. v Liccione, 37 NY2d 899, 901 [1975].) “The critical element is that both suits arise out of the same subject matter or series of alleged wrongs.” (Cherico, Cherico & Assoc. v Midollo, 67 AD3d 622, 622 [2d Dept 2009] [internal quotation marks omitted].)
On a motion to dismiss a complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7), all factual allegations must be accepted as true, the complaint must be construed in the light most favorable to plaintiffs, and plaintiffs must be given the benefit of all reasonable inferences. (Allianz Underwriters Ins. Co. v Landmark Ins. Co., 13 AD3d 172, 174 [1st Dept 2004].) The court determines only whether the facts as alleged fit within any cognizable legal theory. (Leon v Martinez, 84 NY2d 83, 87-88 [1994].) The court must deny a motion to dismiss “if from the pleadings’ four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law.” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal quotation marks omitted].)
“[Nevertheless, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or contradicted by documentary evidence, are not entitled to such *246 consideration.” (Quatrochi v Citibank, 210 AD2d 53, 53 [1st Dept 1994] [citation omitted].)
Fourth Cause of Action as to Whether an Error in a Notice of Lending Results in Loss of Priority for a Building Loan Mortgage
Bank Leumi’s motion to dismiss pursuant to CPLR 3211 (a) (7) is granted as to plaintiffs’ fourth cause of action for a declaratory judgment. Plaintiffs seek a declaratory judgment that the mechanic’s liens have priority over Bank Leumi’s liens due to the bank’s failure to file a proper notice of lending for the HAP3 building loan agreement.
A notice of lending is authorized under Lien Law § 73 and is a statutory device providing an affirmative defense in Lien Law article 3-A trust fund diversion lawsuits. It states:
“In any action against a person to whom trust assets have been transferred, to recover assets diverted from the trust or to recover damages for the diversion, a transferee named in a ‘Notice of Lending’ filed as provided in subdivision three of this section shall be entitled to show by way of defense that the transfer was made as security for or in consideration of or in repayment of advances made to or on behalf of the trustee in accordance with such notice of lending.” (Lien Law § 73 [1].)
On the other hand, a Lien Law § 22 affidavit requires that the lender provide information as to the consideration for the loan, the related expenses, and the net amount available to the borrower and must be filed. (Nanuet Natl. Bank v Eckerson Terrace, 47 NY2d 243, 247 [1979].)
Plaintiffs’ reliance on Aspro Mech. Contr. v Fleet Bank (1 NY3d 324 [2004]) is without merit as the Court of Appeals’ holding does not support plaintiffs’ argument that a proper notice of lending must be filed in order to have priority, avoid claims of diversion and the subordination penalty. Rather, a notice of lending pursuant to Lien Law § 73 may be filed to “protect the lender’s right to repayment from trust funds.” (Aspro Mech. Contr. v Fleet Bank, 1 NY3d 324, 329 [2004].) A notice of lending pursuant to Lien Law § 73 is distinct from a Lien Law § 22 affidavit and while the section 22 affidavit must be filed, the section 73 notice may be filed for the purposes of an affirmative defense. (Id.; Lien Law § 73 [2].) The purpose of a notice of lending under Lien Law § 73 is to put the beneficiary on notice of any distribution of trust assets to repay advances *247 by lenders. (Id.) The filing of a notice of lending is an affirmative defense to a lawsuit charging a trustee with diversion of trust assets. (Id.)
Plaintiffs also argue that because Bank Leumi failed to amend its defective notice of lending, it is in violation of Lien Law § 73 (3) (c), which provides,
“if any amendment [to a notice of lending] increases the maximum balance of advances outstanding to be permitted by the lender, it is effective as to the increased amount only with respect to advances made not more than five days before the date of filing the amended notice or thereafter.”
However, nothing in the Lien Law itself, or by any case cited to by plaintiffs stands for the proposition that this defect provides for a subordination of priority for a building loan. (See Nanuet Natl. Bank, 47 NY2d 243.)
As there are not any factual allegations that amount to a cause of action cognizable at law, Bank Leumi’s motion to dismiss pursuant to CPLR 3211 (a) (7) is granted as to plaintiffs’ fourth cause of action.
Fifth Cause of Action as to Whether a Construction Lender May Waive Defaults under a Building Loan Agreement without Filing a Modification Pursuant to Lien Law § 22
Bank Leumi’s motion to dismiss plaintiffs’ fifth cause of action, seeking a declaratory judgment regarding the priority of plaintiffs’ mechanic’s liens and a subordination penalty based upon the bank’s failure to file an amended Lien Law § 22 affidavit despite alleged material modifications to the building loan agreements, is granted.
A Lien Law notice is required only with respect to “material” modifications of the agreement. (Howard Sav. Bank v Lefcon Partnership, 209 AD2d 473, 475 [2d Dept 1994].) A modification of a building loan agreement is “material” if it: “(1) alters the rights and liabilities otherwise existing between the parties to the agreement or (2) enlarges, restricts or impairs the rights of any third-party beneficiary.” (HNC Realty Co. v Bay View Towers Apts., 64 AD2d 417, 426 [2d Dept 1978].) However, “not every change in a building loan agreement will rise to the level of a modification within the meaning of section 22 of the New York Lien Law.” (In re Lynch III Props. Corp., 125 BR 857, 861 [1991].)
The purpose of the subordination penalty is to prevent an overstatement of the amounts available to pay contractors *248 which might mislead a contractor to perform work based upon an incorrect view of the available funds. (See Nanuet Natl. Bank v Eckerson Terrace, 47 NY2d 243 [1979].) A lender’s decision to enforce or not enforce loan covenants which do not impact the amounts available to pay for improvements to real property does not require any public filings under Lien Law § 22. (See Howard Sav. Bank v Lefcon Partnership, 209 AD2d 473, 476 [2d Dept 1994] [“the disclosure contemplated by the Lien Law is not intended to function as a guarantee that a construction project is adequately financed or economically viable. Nor does the Lien Law impose upon a lender a continuing duty to apprise a contractor of the economic condition of its borrower”].)
The Court in Howard Sav. Bank rejected lienor’s claims to claim material modification based upon failure to enforce loan covenants. The Court stated that there was an
“agreement [that] specifically provides that, ‘[a] 11 conditions to the obligations of Bank to make Advances hereunder are imposed solely and exclusively for the benefit of Bank . . . and no other person or entity shall have standing to require satisfaction of such conditions . . . [or] be deemed to be the beneficiary of such conditions.’ ” (Id. at 476.)
Here, the building loan agreements between Bank Leumi and its borrower have similar language regarding third-party beneficiary status. The agreements state
“no third person shall have any right, claim or interest against either the Lender or the Borrower by virtue of any provision hereof . . . the Lender does not and shall not be deemed to have assumed any responsibility to the Borrower or anyone else with respect to the proper construction of the Improvement, the performance of contracts by any contractor or subcontractors or the prevention of claims for, or the filing of, mechanic’s liens.” (At 15-16 of exhibit D annexed to the moving affirmation of Bruce Lederman dated Mar. 17, 2016.)
Under the agreements, plaintiffs are not third-party beneficiaries of loan covenants as between the lender and the borrower. As a result, it is the bank’s decision to exercise or refrain from exercising its rights under the agreement, which is not a modification within the meaning of the Lien Law. Therefore, plaintiffs cannot claim material modification based upon a failure to enforce loan covenants.
*249 Plaintiffs’ claim that the ruling in Howard Sav. Bank is inapplicable is misguided. Plaintiffs assert that the Court did not specify the details of the default and that the Court based its decision on the fact that “the [loan] agreement does not obligate the Bank to seek additional funding from the developer so as to make up any shortfalls which might occur, or to invoke any of its contractual remedies in the event the developer is unable to contribute additional funds to the project.” (209 AD2d at 476.) The building loan agreements provide that the
“Borrower shall deposit with the Lender, from time to time, such sums as the Lender in consultation with the Construction Inspector, shall require to be added to the undisbursed portion of the Loan in order to cause each Budget Line Item to be in balance. Any sum so deposited with the Lender pursuant to this Section 7(f) shall be advanced prior to the advance of the proceeds of the Loan to pay for the Budget Line Item(s) for which such sum was so deposited.” (Lucas aff, exhibit 1, ¶ 112.)
Plaintiffs rely upon the federal court’s ruling in Yankee Bank for Fin. & Sav., FSB v Task Assoc., Inc. (731 F Supp 64, 70 [ND NY 1990]), for the proposition that where the entire agreement states that a party is required to post a bond before any more of the loan proceeds could be advanced on the project, the construction loan agreement creates specific rights in third parties and permits mechanic’s lienors to sue for payment directly on the bond. However, unlike in Yankee Bank, the building loan agreements specifically state that third parties shall not have any claims against the lender or the borrower. This precludes the plaintiffs from claiming a material modification based upon a failure to enforce loan covenants.
For the reasons stated above, Bank Leumi’s motion to dismiss is granted.
Sixth Cause of Action as to Whether the Action is Barred by Prior Action Pending and Therefore Must be Determined in the Mechanic’s Lien Foreclosure Action
Defendants’ motion to dismiss plaintiffs’ sixth cause of action is denied. On a motion to dismiss a complaint where there is another action pending between the same parties for the same cause of action in a court of any state pursuant to CPLR 3211 (a) (4), a court has broad discretion in determining whether an action should be dismissed. (See Whitney v Whitney, 57 NY2d 731, 732 [1982]; Scottsdale Ins. Co. v Indemnity Ins. Corp. *250 RRG, 110 AD3d 783, 784 [2d Dept 2013]; Kent Dev. Co. v Liccione, 37 NY2d 899, 901 [1975].) “The critical element is that both suits arise out of the same subject matter or series of alleged wrongs.” (Cherico, Cherico & Assoc. v Midollo, 67 AD3d 622, 622 [2d Dept 2009] [internal quotation marks omitted].)
Defendants allege that the sixth cause of action improperly seeks a determination of the relative priority of mechanic’s liens over certain building loans and project loans which must be determined in a lien foreclosure action. Defendants argue that this prior lien foreclosure action is already before this court. (See Airitan Mgt. Corp. v 2328 2nd Ave. Mazal LLC, Sup Ct, NY County, Singh, J., index No. 158559/2014.)
Article 2 lien foreclosure and article 3-A class action remedies may be pursued simultaneously. In A. T.A. Constr. Corp. v Mazl Bldg. LLC (2013 NY Slip Op 32175[U] [Sup Ct, NY County 2013]), the court held that “[a]lthough plaintiff cannot recover on duplicative claims, it is entitled to pursue both its trust fund remedies and ordinary remedies in enforcing the lien.” (Id. at *10, citing Matter of New Rochelle Contr. Corp. v American Steel Erectors, 304 AD2d 581, 582 [2d Dept 2003]; see also NY Professional Drywall of OC, Inc. v Rivergate Dev., LLC, 100 AD3d 216, 219 [3d Dept 2012] [“plaintiff may simultaneously maintain an action to foreclose its mechanic’s lien and an action under article 3-A”]; International Assn. of Heat & Frost Insulators & Asbestos Workers Local No. 26 Welfare Fund, Pension Fund & Annuity Fund v Hebert Indus. Insulation, 234 AD2d 930, 930 [4th Dept 1996] [“petitioners . . . did not elect their remedies by filing Federal actions or mechanics’ liens. It is well settled that the trust fund remedy under article 3-A of the Lien Law is not exclusive and does not preclude a creditor from pursuing other remedies to enforce the lien”].)
Defendants’ reliance on Lien Law § 77 is misguided at this juncture. Under Lien Law § 77 (2), “such [class] action may be maintained . . . provided no other such action is pending at the time of the commencement thereof.” Defendants claim that because the Airitan claim arises out of article 3-A and the prior action pending seeks to vindicate any rights that arise out of article 3-A, Lien Law § 77 is a bar to this action. (See oral argument at 45-46.) Defendants admit that the prior action was not done in the form of a class action. (See oral argument at 45.) In determining the meaning of statutory language, the court must first look to the “language itself, giving effect to the *251 plain meaning thereof.” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see also Roberts v Tishman Speyer Props., L.P., 62 AD3d 71, 81 [1st Dept 2009].) The unambiguous language of Lien Law § 77 (1) states that the trust may be enforced by the “holder of any trust claim ... in a representative action brought for the benefit of all beneficiaries of the trust.” It is clear that in order for section 77 (2) to be applicable, the prior pending action must be a class action suit. As there is no prior class action suit pending before this court, Lien Law § 77 does not act as a barrier to plaintiffs’ action.
Bank Leumi also seeks to dismiss plaintiffs’ sixth cause of action on the premise that a declaratory judgment is more appropriately determined in a lien foreclosure action and additionally that a declaratory judgment is inappropriate where the plaintiffs have agreed to arbitrate their disputes.
First, Bank Leumi contends that the determination of the priority of certain mechanic’s liens over certain building loans and project loans must be determined in a lien foreclosure action and not in a declaratory judgment action. (See Bank Leumi’s mem in support at 17.) Bank Leumi’s reliance on Altshuler Shaham Provident Funds, Ltd. v GML Tower, LLC (21 NY3d 352 [2013]) for this proposition is without merit. In Alt-shuler, the Court of Appeals considered whether a subordination penalty applies to funds loaned in a building loan contract for financing the purchase of the property on which the improvements are to be made. (Id. at 365.) The Court held that the “subordination penalty logically applies only to funds loaned to pay for improvements.” (Id. at 367.) Although this decision was reached in the context of a lien foreclosure action, the Court did not hold, as Bank Leumi posits, that the exclusive means of determining the relative priority of mechanic’s liens over building loans and project loans is through a lien foreclosure action.
Second, Bank Leumi argues that parties to an agreement may not seek a declaration of their contract rights when their agreement specifies a different, reasonable means for resolving such disputes. (Kalisch-Jarcho, Inc. v City of New York, 72 NY2d 727, 732 [1988]; see also Rifkin v Rifkin, 281 App Div 1035 [2d Dept 1953] [an action for declaratory judgment should be dismissed where the plaintiff had agreed to arbitrate the issues involved].) Similarly, the First Department has held, “[a] declaratory judgment ... is generally appropriate only where a conventional form of remedy is not available. Where alterna *252 tive conventional forms of remedy are available, resort to a formal action for declaratory relief is generally unnecessary and should not be encouraged.” (Bartley v Walentas, 78 AD2d 310, 312 [1st Dept 1980].)
However, the line of cases that Bank Leumi relies upon applies where both parties are in privity with each other. Here, plaintiffs and Bank Leumi agree that the parties are not in privity. Bank Leumi has failed to address the issue of whether a party may seek a declaratory judgment when they are not in direct privity with the opposing party. Finally, Bank Leumi argues that the declaratory judgment should be dismissed in this court’s discretion. At this early stage of the proceedings, the court will not exercise its discretion to dismiss all of plaintiffs’ claims seeking a declaratory judgment. Bank Leu-mi’s motion to dismiss is denied.
Plaintiffs’ Cross Motions
Plaintiffs’ Request for an Interim Accounting and Access to Defendants’ Books and Records
Plaintiffs cross-move for an order compelling all defendants to provide an interim accounting and access to their books and records pursuant to Lien Law §§ 73, 76 and 77 (3) (a) (i). Lien Law § 76 (1) provides,
“Any beneficiary of the trust holding a trust claim shall be entitled, upon request, after the expiration of thirty days from the date his trust claim became payable, and thereafter not oftener than once in each month, (a) to examine the books or records of the trustee with respect to the trust, and to make copies of any part or parts thereof relating to the trust; or (b) at the beneficiary’s option to receive a verified statement setting forth the entries with respect to the trust contained in such books or records.”
The payments were due in 2014 and the plaintiffs have not received either the books or records or a verified statement from the owners. From the plain reading of the statute, plaintiffs are entitled to examine the books or records of the trustee or to receive a verified statement. Plaintiffs’ cross motion for an interim accounting is granted.
Plaintiffs’ Cross Motion for Consolidation
Plaintiffs argue that if this court finds that the facts, legal issues, relief sought and parties in the two actions are suf *253 ficiently similar to proceed on a motion to dismiss under CPLR 3211 (a) (4), consolidation under CPLR 602 is the more appropriate action. CPLR 602 (a) provides,
“When actions involving a common question of law or fact are pending before a court, the court, upon motion, may order a joint trial of any or all the matters in issue, may order the actions consolidated, and may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.”
“Consolidation is generally favored in the interest of judicial economy and ease of decision-making where cases present common questions of law and facts.” (Raboy v McCrory Corp., 210 AD2d 145, 147 [1st Dept 1994].) “Although a motion pursuant to CPLR 602 (a) to consolidate two pending matters is addressed to the sound discretion of the trial court, consolidation is favored by the courts in serving the interests of justice and judicial economy.” (Government Empls. Ins. Co. v Bailey, 251 AD2d 627, 628 [2d Dept 1998] [citations omitted] [reversing denial of unopposed motion for consolidation where similar issues of law and fact involved].) “When consolidation is proposed, the burden today is on the resisting party to show that it would prejudice him.” (Siegel, NY Prac § 128 at 228 [5th ed 2011].)
Courts have granted consolidation where the two actions addressed “the same set of promissory notes” to avoid “further fragmentization, thus precluding the possibility of inconsistent decisions.” (Rae v Hotel Governor Clinton, 23 AD2d 564, 565 [2d Dept 1965].) Courts have also consolidated actions where “there were common questions of law and fact in those actions, even though different properties were involved.” (Nationwide Assoc. v Targee St. Internal Med. Group, P.C. Profit Sharing Trust, 286 AD2d 717, 718 [2d Dept 2001] [granting consolidation of four of five cases].)
Similar to the facts herein, the court may consolidate two actions pursuant to CPLR 602 rather than dismiss a subsequent action pursuant to CPLR 3211 (a) (4) where the plaintiffs in the second cause of action “cannot obtain full redress of their rights in the first action because the pending affirmative defenses [in the first action] merely challenge [the lender’s] right to recover a deficiency in the amount claimed, and do not entitle [the borrower] and the guarantors to affirmative relief” sought in the second action and “both actions arise from the *254 same transaction, concern the same parties, and involve common questions of law and fact.” (Viafax Corp. v Citicorp Leasing, Inc., 54 AD3d 846, 849-850 [2d Dept 2008] [restoring second action seeking relief not available via affirmative defenses raised in first cause of action].)
Also, even where the actions are, as here, not “between the same parties for the same cause of action” if the “actions involve common questions of law or fact the actions should [be] consolidated” pursuant to CPLR 602 rather than dismissed pursuant to CPLR 3211 (a) (4). (Fay Estates v Toys “R” Us, Inc., 22 AD3d 712, 713-714 [2d Dept 2005].) Therefore, plaintiffs’ cross claim to consolidate the actions under CPLR 602 is granted.[3]
Accordingly, it is hereby ordered that Bank Leumi’s motion to dismiss plaintiffs’ fourth cause of action is granted without leave to replead; and it is further ordered that Bank Leumi’s motion to dismiss plaintiffs’ fifth cause of action is granted without leave to replead; and it is further ordered that defendants’ motion to dismiss plaintiffs’ sixth cause of action is denied; and it is further ordered that plaintiffs’ cross motion seeking an interim accounting is granted and defendants are hereby ordered to provide plaintiffs with an interim accounting pursuant to Lien Law §§ 73 and 77 (3) (a) (i) within 60 days of this decision; and it is further ordered that plaintiffs’ cross motion to consolidate the actions is granted.

. Defendants have conceded that there was proper re-service for purposes of CPLR 3211 (a) (8). (See oral argument at 41-43.)

. Airitan filed a mechanic’s lien against the HAP2 project on August 21, 2014 for $215,201.06, which was bonded, and filed a mechanic’s lien against the HAP3 project on September 24, 2014 for $1,596,421, which was not bonded. Danya filed a mechanic’s lien against the HAP2 project on December 29, 2014 for $242,055, which was bonded, and against the HAP3 project on the same date for $561,124, which was not bonded.

. The court declines any leave to replead as any such leave would be futile. (See e.g. Cusack v Greenberg Traurig, LLP, 109 AD3d 747, 749 [1st Dept 2013]; Health-Loom Corp. v Soho Plaza Corp., 209 AD2d 197, 198 [1st Dept 1994].)